[No. G040200. Fourth Dist., Div. Three. May 20, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LEE CADOGAN, Defendant and Appellant.

## COUNSEL

Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Raquel Gonzalez and Marilyn L. George, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

IKOLA, J.—A jury convicted defendant Robert Lee Cadogan of forcible rape (Pen. Code, § 261, subd. (a)(2)),[1] forcible oral copulation (§ 288a, subd. (c)(2)), attempted sodomy by use of force (§§ 286, subd. (c)(2), 664), and first degree residential burglary (§ 459). The court sentenced defendant to 37 years to life in prison. Defendant contends in his appeal that the court erred by admitting at trial evidence obtained at a conditional examination of his late wife, because defendant's competency was in question at the time of the conditional examination. Defendant also asserts the prosecution was unfairly allowed to attack his credibility with prior misdemeanor convictions.

We reject both arguments and affirm the judgment.[2] Trial courts have discretion to allow conditional examinations of dying witnesses to go forward, notwithstanding the suspension of criminal proceedings mandated by

---

[1] All statutory references are to the Penal Code, unless otherwise specified.

[2] Defendant also contends, and the People concede, that a sentencing error occurred with regard to defendant's attempted sodomy conviction. We agree with this portion of defendant's appeal and provide instructions below in the disposition to correct this error.

section 1368, subdivision (c). The testimony taken at a conditional examination should be excluded from trial only if the defendant is subsequently found to have been incompetent at the time of the conditional examination. Moreover, the court properly allowed the impeachment of defendant based on conduct involving moral turpitude. Although defendant was improperly asked about his misdemeanor *convictions* rather than his prior *conduct* leading to misdemeanor convictions, defendant did not raise a timely hearsay objection to the prosecutor's questions and is therefore foreclosed from seeking relief on appeal. (*People v. Wheeler* (1992) 4 Cal.4th 284, 295–299 [14 Cal.Rptr.2d 418, 841 P.2d 938] (*Wheeler*).)

## FACTS

In the early morning hours of December 24, 2004, defendant entered the residence in which his victim was sleeping. Defendant blocked the door of the room the victim was sleeping in, shoved a gloved hand in the victim's mouth, and threatened to kill her. Defendant put his penis in the victim's mouth, attempted to penetrate her anus, and then inserted his penis into her vagina. Defendant does not claim there was insufficient evidence to sustain any of his convictions, so we need not provide a comprehensive catalogue of the evidence presented at trial. Instead, we will detail the relevant procedural history underlying defendant's claims that certain evidence should have been excluded from his trial.

In February 2005, the court ordered criminal proceedings suspended based on defense counsel's representation that he believed defendant might be mentally incompetent. The court also ordered a psychological evaluation of defendant to occur. In March 2005, the court received a report from a psychologist opining defendant was not competent to stand trial. Defendant, however, refused to talk to the psychologist and insisted at the hearing he was competent to stand trial. On that basis, the court ordered a second evaluation of defendant by a second psychologist.

In May 2005, the prosecution moved for a conditional examination of defendant's wife, Paris Cadogan, on the grounds she was terminally ill with cancer and likely would not survive until trial. Defendant opposed the motion, arguing the criminal proceedings had been suspended and the conditional examination should not go forward. The court ordered the conditional examination to proceed: "There's no question that we may go through this exercise and ultimately the conditional exam not be admitted based on [defendant's competency issues]. I absolutely agree with you. On the other hand, if we don't preserve the testimony it's gone forever."

The conditional examination of Mrs. Cadogan occurred on May 16, 2005. Midway through the examination, defendant engaged in disruptive behavior and the court ordered defendant's removal from the courtroom. For the remainder of the conditional examination, defendant was locked in a holding cell in which he could listen to the examination while his counsel continued to participate. Mrs. Cadogan provided testimony probative of defendant's guilt. For instance, she stated defendant fled from her home when the police arrived to question him, she described sexual characteristics of defendant matching testimony by the victim, and she explained defendant has a skin condition (vitiligo) which resulted in white patches on his hands and genitals (confirming the victim's description). Mrs. Cadogan died in June 2005.

The court granted several continuances of the civil competency trial in June and August 2005 to allow the prosecution time to have an expert examine defendant. The court also granted a motion to compel defendant to submit to a psychological examination, based in part on defendant's refusal to submit to previous attempts to examine him. The court then granted two motions by defendant for continuances to retain new counsel. The competency trial began in April 2006. In May 2006, a jury found defendant to be competent to stand trial and the court reinstated criminal proceedings against defendant.

In July 2007, a second jury was impaneled and defendant's trial on his alleged crimes began. Defendant filed a motion seeking dismissal of the case based on the court having allowed the conditional examination despite the case having been suspended pursuant to section 1368, subdivision (c). Defendant requested an evidentiary hearing in the written motion. But at the hearing on the motion, defendant declined to present any new evidence, instead opting to submit his motion for dismissal based on his legal arguments. The court denied defendant's motion to dismiss and permitted the prosecution to play the videotape of Mrs. Cadogan's conditional examination for the jury.

The court also allowed the prosecutor to cross-examine defendant concerning his criminal record. The list of nine prior, out-of-state convictions included five misdemeanors and four felonies: a misdemeanor conviction for forgery in 1984; a misdemeanor conviction for forgery in 1989; a felony conviction for theft in 1990; a misdemeanor conviction for possession of stolen property in 1994; a felony conviction for attempting to evade police in 1998; a misdemeanor conviction for possession of stolen property in 1999; a felony conviction for attempting to elude authorities in 2000; a misdemeanor conviction for theft in 2000; and a felony conviction for possession of stolen

property in 2000. Defendant objected before trial to the use of this evidence, claiming remote, out-of-state misdemeanors should not be used to impeach his credibility; the court overruled defendant's objections.

## DISCUSSION

*Admissibility of the Conditional Examination of Mrs. Cadogan*

Defendant first argues the court erred by admitting testimony taken at the conditional examination. When Mrs. Cadogan's testimony was taken, the court had already ordered a competency hearing and suspended criminal proceedings pursuant to section 1368, subdivision (c). Defendant asserts a conditional examination of a terminal cancer patient is a "proceeding[]" that must be "suspended until the question of the present mental competence of the defendant has been determined." (*Ibid.*) Defendant reasons that, because the court supposedly violated this rule, the proper remedy for the error was to exclude from trial the testimony provided by Mrs. Cadogan at the conditional examination. As the court declined to exclude Mrs. Cadogan's testimony at trial, defendant claims he is entitled to a new trial.

We are presented, then, with two questions: (1) Should the court have allowed the conditional examination of Mrs. Cadogan to proceed despite the suspension of "proceedings" mandated by section 1368, subdivision (c); and (2) should the court have excluded at trial all testimony obtained from Mrs. Cadogan, even though defendant was found to be competent prior to trial but after the conditional examination?

■ Sections 1335 and 1336 authorize conditional examinations of witnesses in certain circumstances, including when the witness "is so sick or infirm as to afford reasonable grounds for apprehension that he or she will be unable to attend the trial" (§ 1336, subd. (a)) or when "there is evidence that the life of [the] witness is in jeopardy . . ." (§ 1336, subd. (b)). "The defendant has the right to be present in person and with counsel at [such] examination . . . ." (§ 1340, subd. (a).) "The deposition . . . may be read in evidence, or if the examination was video-recorded, . . . shown by either party at the trial if the court finds that the witness is unavailable as a witness within the meaning of Section 240 of the Evidence Code." (§ 1345.) As Mrs. Cadogan died before defendant's trial, she was obviously "unavailable" under Evidence Code section 240, subdivision (a)(3). Under ordinary circumstances, this case presented a textbook example of the proper use of a conditional examination to preserve evidence.

■ But defendant insists the conditional examination should not have proceeded because the court had already ordered a competency hearing to occur and suspended the criminal proceedings. "A person cannot be tried or adjudged to punishment while that person is mentally incompetent. A defendant is mentally incompetent . . . if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a).) "Except as provided in Section 1368.1, when an order for a hearing into the present mental competence of the defendant has been issued, *all proceedings in the criminal prosecution shall be suspended until the question of the present mental competence of the defendant has been determined.*" (§ 1368, subd. (c), italics added; see also *People v. Ramos* (2004) 34 Cal.4th 494, 507 [21 Cal.Rptr.3d 575, 101 P.3d 478] ["If a defendant presents substantial evidence of his lack of competence and is unable to assist counsel in the conduct of a defense in a rational manner during the legal proceedings, the court must stop the proceedings and order a hearing on the competence issue."].)

Often, questions of competency arise at the beginning of or during trial. (See, e.g., *People v. Lawley* (2002) 27 Cal.4th 102, 125–127 [115 Cal.Rptr.2d 614, 38 P.3d 461].) Indeed, section 1368, subdivision (c), provides guidance as to when a jury "impaneled and sworn to try the defendant" should be discharged in the event the need for a competency hearing results in suspension of the trial. Thus, it is clear competency issues must be adjudicated before a trial of the merits proceeds, which is precisely what happened in the case before us.

■ It is also clear that sentencing is a proceeding in the criminal prosecution that must be suspended until the question of competency has been determined. (See *People v. Oglesby* (2008) 158 Cal.App.4th 818, 827 [70 Cal.Rptr.3d 443] [noting "competency hearing can be held at any stage in the proceedings prior to judgment" and that if defendant "had been found mentally incompetent [after his guilty plea], the criminal proceedings would have been suspended . . . before his sentence was imposed"]; *People v. Humphrey* (1975) 45 Cal.App.3d 32, 38 [119 Cal.Rptr. 74] [judgment reversed because evidence of mental state of defendant "at the time sentence and judgment were pronounced" necessitated a hearing].)

■ One question before us is whether a conditional examination should be treated in the same fashion as a trial or sentencing proceeding, i.e., suspended until competency has been determined. Section 1368.1, identified in section 1368 as a source of exceptions to the rule that "all proceedings . . . shall be suspended," makes no mention of conditional examinations of witnesses. Section 1368.1 references certain defense motions and preliminary

hearings (at the request of defense counsel) as the only exceptions to the suspension of proceedings mandated by section 1368, subdivision (c).

No California case directly addresses whether a conditional examination of a witness may proceed prior to an ordered competency hearing. One case holds that merely entertaining, and providing relief to a defendant on, a substitution of counsel motion does not violate the proscription against conducting proceedings after the need for a competency hearing is established. (*People v. Stankewitz* (1990) 51 Cal.3d 72, 87–90 [270 Cal.Rptr. 817, 793 P.2d 23].) Hence, it must be true that section 1368, subdivision (c), does not literally suspend all proceedings pending a competency hearing. But the result in *People v. Stankewitz, supra,* 51 Cal.3d 72, does not implicate a defendant's constitutional right to confront witnesses while able to understand the proceedings and assist counsel in a rational manner.

Defendant relies on case law addressing the issue of competency at preliminary hearings. A defendant is entitled to contest probable cause at a preliminary hearing notwithstanding the pendency of competency issues. (See *Hale v. Superior Court* (1975) 15 Cal.3d 221, 227–229 [124 Cal.Rptr. 57, 539 P.2d 817]; § 1368.1, subd. (a) [mandating that competency hearing occur prior to filing of information unless defendant exercises option of proceeding with preliminary hearing prior to competency hearing].) But the information that issues as a result of the preliminary hearing must be set aside if it is later shown a defendant was incompetent at the time of the preliminary hearing. (*People v. Duncan* (2000) 78 Cal.App.4th 765, 770–772 [93 Cal.Rptr.2d 173] (*Duncan*); *Chambers v. Municipal Court* (1974) 43 Cal.App.3d 809, 813 [118 Cal.Rptr. 120].)

Thus, absent the constitutional and statutory requirement that a preliminary hearing go forward (at defendant's request) despite the need for a competency hearing, a preliminary hearing logically would be classified as a "proceeding[] in the criminal prosecution" that must be suspended until "the question of [competency] has been determined." (§ 1368, subd. (c).) To make certain every defendant receives one preliminary hearing at which he or she is competent, courts have adopted the remedy of setting aside an information resulting from a preliminary hearing that was improper when looked at retrospectively (because it is later determined the defendant was incompetent). (See *Duncan, supra,* 78 Cal.App.4th at p. 771 [court is required to "set aside the information when a defendant is determined to have been incompetent at his preliminary hearing"]; *Bayramoglu v. Superior Court* (1981) 124 Cal.App.3d 718, 726–729 [176 Cal.Rptr. 487] (*Bayramoglu*) [defendant entitled to evidentiary hearing on § 995 motion to set aside information based on claim he lacked competency at the preliminary hearing, even though he had been found to be presently competent at a hearing following the

preliminary hearing]; *Stevenson v. Superior Court* (1979) 91 Cal.App.3d 925, 929–930 [154 Cal.Rptr. 476] (*Stevenson*).)

Of particular relevance to the instant case is *Stevenson, supra,* 91 Cal.App.3d 925. There, the key witness against defendant Stevenson testified at the first preliminary hearing, but Stevenson was subsequently found to have been incompetent at the time of the initial preliminary hearing, invalidating the information that had been filed. (*Id.* at pp. 927–928.) The key witness could not be located in time to testify at the second preliminary hearing; the court allowed the prosecution to introduce the key witness's testimony from the first preliminary hearing. (*Id.* at p. 928.) Stevenson petitioned for a writ of prohibition when the trial court denied his motion to dismiss the second information for lack of competent evidence. (*Id.* at pp. 928–929.) The appellate court granted relief to Stevenson, rejecting the argument that Stevenson's counsel represented him at the initial preliminary hearing and that Stevenson's right of confrontation was therefore vindicated despite his incompetency at the time of the hearing. (*Id.* at pp. 929–930.) The appellate court concluded, "A preliminary hearing that takes place when the defendant is incompetent is conclusively violative of due process, regardless of the extent of cross-examination by counsel or of any other facts in the case." (*Id.* at p. 930.)

■ In light of the clear language of the statute, as well as the case law set forth above, we agree with defendant that a conditional examination, like a trial on the merits or a sentencing hearing, is a "proceeding" subject to the suspension requirement set forth in section 1368, subdivision (c). When possible, a conditional examination should be suspended until the defendant has been found to be competent. Indeed, a preliminary hearing, another proceeding in which testimony is taken against a defendant, is not always suspended by section 1368, subdivision (c), only because countervailing constitutional considerations (the fear that without a preliminary hearing, an incompetent defendant could be held in custody despite the lack of probable cause) led to an explicit statutory exception from the "suspension" requirement for preliminary hearings.

■ We conclude, however, that the court below acted properly in all respects. A trial court has the " 'inherent . . . discretion to control the proceedings to ensure the efficacious administration of justice.' " (*People v. Gonzalez* (2006) 38 Cal.4th 932, 951 [44 Cal.Rptr.3d 237, 135 P.3d 649].) Moreover, in construing the statutes at issue "according to the fair import of their terms, with a view to effect [the Penal Code's] objects and to promote justice" (§ 4), we do not think the Legislature intended by enacting section 1368, subdivision (c), to foreclose the preservation of evidence by way of conditional examination in extraordinary circumstances such as those presented in this case. We think, in exercising its inherent discretion to control

the proceedings before it, a trial court may allow a conditional examination to proceed before a competency hearing ordered pursuant to section 1368, subdivision (c). This is particularly true where, as here, the defendant's intransigence is a primary cause of delay in making the competency determination. We can find no fault with the court's decision to go forward with the conditional examination subject to a later determination of the admissibility of the examination.

The remedy associated with preliminary hearings can effectively guarantee defendant's constitutional rights. Evidence garnered from a conditional examination should be excluded from trial if a finding is made that the defendant was incompetent at the time of the conditional examination. But in the instant case, a jury specifically found defendant to be competent. Thus, there was no need to exclude Mrs. Cadogan's testimony from trial.

■ In his reply brief, defendant claims this court should, "[a]t the very least," remand the case to the trial court for an evidentiary hearing as to whether defendant was competent at the time of the conditional examination. (See *Bayramoglu, supra,* 124 Cal.App.3d at pp. 726–729 [even if found to be competent at time of trial, defendant has right to second, retrospective competency hearing when defendant moves to dismiss information based on claim of incompetency at the preliminary hearing].) But the distinction between this case and *Bayramoglu* is that defendant here did not insist upon a separate, retrospective evidentiary hearing on his competency at the time of his conditional examination. Instead, defendant argued to the trial court and now argues on appeal that the conditional examination should have been excluded merely because his competency was in question at the time of the conditional examination. We reject this argument. It is "presumed that the defendant is mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent." (§ 1369, subd. (f).) Defendant failed to rebut the presumption of competency at the competency hearing given to him, and did not attempt to prove with evidence (as opposed to speculation by defendant's attorney) that the situation was any different at the time of the conditional examination. The court properly allowed the prosecution to preserve Mrs. Cadogan's testimony, notwithstanding the general suspension of all criminal proceedings. And the court properly admitted into evidence the testimony taken at the conditional examination.

*Impeachment of Defendant with Misdemeanor Convictions*

Defendant also claims the court erred by allowing the prosecutor to elicit testimony from defendant on cross-examination confirming he was convicted of five out-of-state misdemeanors—two counts of forgery, two counts of possession of stolen property, and one count of theft. For each of the

misdemeanors, the prosecutor asked defendant whether he had been convicted of the crime, and defendant responded affirmatively to each inquiry. Defendant further suggests the error was compounded because the prosecutor refrained from identifying the convictions as misdemeanors; the prosecutor explicitly referred to four prior felony convictions as felonies, but did not specify the five misdemeanor convictions as either felonies or misdemeanors.[3]

■ "Misdemeanor convictions . . . are not admissible for impeachment, although evidence of the underlying *conduct* may be admissible subject to the court's exercise of discretion." (*People v. Chatman* (2006) 38 Cal.4th 344, 373 [42 Cal.Rptr.3d 621, 133 P.3d 534]; see also *Wheeler, supra,* 4 Cal.4th at pp. 295–299.) "Past criminal conduct involving moral turpitude that has some logical bearing on the veracity of a witness in a criminal proceeding is admissible to impeach . . ." a witness. (*People v. Harris* (2005) 37 Cal.4th 310, 337 [33 Cal.Rptr.3d 509, 118 P.3d 545].) Moral turpitude offenses "include[] crimes in which dishonesty is an element (i.e., fraud, perjury, etc.)." (*People v. Chavez* (2000) 84 Cal.App.4th 25, 28 [100 Cal.Rptr.2d 680].)

Here, defendant does not deny each of the misdemeanors used to impeach him involved moral turpitude. (See, e.g., *People v. Rodriguez* (1986) 177 Cal.App.3d 174, 178–179 [222 Cal.Rptr. 809] [theft and possession of stolen property]; *People v. Parrish* (1985) 170 Cal.App.3d 336, 349 [217 Cal.Rptr. 700] [forgery].) Nor does defendant claim the court abused its discretion under Evidence Code section 352 by allowing the impeachment of defendant based on his past conduct involving moral turpitude. Instead, defendant claims the prosecutor improperly asked defendant whether he had been *convicted* of forgery, theft, and possessing stolen property, rather than asking defendant whether he had possessed stolen property, forged documents, and stolen personal property.

To analyze this issue, it is necessary to revisit why the fact of a misdemeanor conviction is inadmissible while the actual conduct which led to the misdemeanor conviction is (in the court's discretion) admissible. In *Wheeler, supra,* 4 Cal.4th 284, a case in which a key defense witness was impeached by asking her about a prior misdemeanor conviction (*id.* at pp. 288–289), our Supreme Court reaffirmed "the long-established understanding that a misdemeanor conviction comes within the statutory rule of inadmissible hearsay"

---

[3] Defendant concedes in his reply brief that the prosecutor might have believed it was improper to refer to the five misdemeanor convictions as misdemeanors, and this explains why the prosecutor explicitly identified felony convictions as felonies but did not do the same for the misdemeanor convictions.

(*id.* at pp. 298–299).[4] The *Wheeler* court therefore found error in the admission of testimony confirming the existence of a prior misdemeanor conviction, but affirmed because the *Wheeler* defendant failed to object on hearsay grounds at trial. (4 Cal.4th at p. 300.)

Here, similarly, defendant was asked about prior convictions rather than prior conduct, without a hearsay objection being raised by defense counsel. Defendant objected before trial to the use of the forgery, theft, and possession of stolen property misdemeanors on grounds of remoteness and the fact that the crimes were misdemeanors. But defendant never raised a hearsay objection to the phrasing of the questions asked of defendant. "A verdict shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion . . . ." (Evid. Code, § 353, subd. (a).) Defendant's appeal of this issue is noncognizable. Had defendant raised a timely objection, the prosecutor could have rephrased her questions to ask defendant about past conduct bearing on his credibility rather than the fact that he had suffered specific misdemeanor convictions. The lack of timely objections also dooms defendant's claim of error in the prosecutor's allegedly argumentative and prejudicial examination of defendant.

*Sentencing*

Lastly, defendant asserts, and the People concede, that the court erred in imposing defendant's sentence with regard to his attempted sodomy conviction. The court designated defendant's forcible rape conviction as the principal count, for which defendant received a sentence of 25 years to life. The court then imposed full, consecutive terms of eight years for the forcible oral copulation count and four years for the attempted sodomy count. The court

---

[4] Evidence Code section 788 states: "For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony . . . ." There is no similar section in the Evidence Code specifically authorizing misdemeanor convictions to be utilized by way of cross-examination for the purpose of impeaching a witness. Evidence Code section 452.5, subdivision (b), enacted in 1996, provides: "An official record of conviction certified in accordance with subdivision (a) of Section 1530 is admissible pursuant to Section 1280 to prove the commission, attempted commission, or solicitation of a criminal offense, prior conviction, service of a prison term, or other act, condition, or event recorded by the record." Thus, this section "creates a hearsay exception allowing admission of qualifying court records to prove not only the fact of conviction, but also that the offense reflected in the record occurred." (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1460 [119 Cal.Rptr.2d 272].) But in the case before us, the prosecutor attempted to impeach defendant by eliciting hearsay testimony about a prior conviction, a form of evidence not excepted from the hearsay rule by Evidence Code section 452.5, subdivision (b).

chose the "aggravated term" for forcible oral copulation based on finding numerous factors in aggravation pursuant to California Rules of Court, rule 4.421, and specifically noted that "[o]rdinarily there is always some type of mitigating factor" but this "is one . . . where it is impossible for me to find such a mitigating factor." The court then described the attempted sodomy sentence as the "aggravated term of four years" in its comments on the record and the "UPPER term of 4 years and 0 months" in the minute order. The court stayed imposition of defendant's burglary sentence pursuant to section 654.

■   Forcible sodomy is punishable by three, six, or eight years in prison. (§ 286, subd. (c)(2).) "If the crime attempted is punishable by imprisonment in the state prison, the person guilty of the attempt shall be punished by imprisonment in the state prison for one-half the term of imprisonment prescribed upon a conviction of the offense attempted." (§ 664, subd. (a).) One-half of the "upper" or "aggravated" term for forcible sodomy is four years. Thus, it appears the court simply selected the upper term sentence for attempted sodomy (four years).

■   But "[t]he most fundamental limitation on consecutive sentencing is that the sentence for each subordinate term is one-third of the middle term prescribed for the crime." (3 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Punishment, § 308, pp. 399–400; see § 1170.1, subd. (a) ["[W]hen any person is convicted of two or more felonies . . . the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term, and any additional term imposed for applicable enhancements . . . ." "The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses."].) Although certain sex crimes, such as forcible sodomy and forcible oral copulation, are not subject to the limitations of section 1170.1, subdivision (a), *attempted* forcible sodomy is subject to the limitation. (See § 667.6, subd. (c); *People v. Le* (1984) 154 Cal.App.3d 1, 10–11 [200 Cal.Rptr. 839].)

The middle term for attempted forcible sodomy is three years. As noted by the People in their brief, the proper sentence for defendant's attempted sodomy conviction is "one-third of the middle term of three years." Thus, defendant should have received a one-year consecutive term rather than a four-year consecutive term for his attempted sodomy conviction.

## DISPOSITION

The judgment is modified to reflect that defendant's consecutive sentence for attempted sodomy is reduced from four years to one year, bringing his total prison term commitment from 37 years to life to 34 years to life. The trial court is directed to prepare an amended abstract of judgment reflecting the modified sentence and to forward a certified copy to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

O'Leary, Acting P. J., and Moore, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 9, 2009, S174124.